**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**SHEDRICK L. MOORE**                                                   **PLAINTIFF**

v.                                                                     No. 5:24-cv-142-BJB

**OFFICER ROBERT STUCKI**                                               **DEFENDANT**

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Shedrick Lance Moore called the police one evening to report property damage to his car. Once Officer Robert Stucki arrived, Moore told him that Andre Bell damaged his car. But Bell, who was present, offered a contrary account: Moore had tried to run him over. Stucki arrested Moore instead of Bell—and that choice led to this *pro se* litigation.

Moore alleged that Stucki arrested him unlawfully, deprived him of due process and equal protection of the laws, and maliciously prosecuted him. But at the same time, Moore faced criminal charges for wanton endangerment. So Stucki asked the Court (and Moore agreed) to hold in abeyance two claims—unlawful arrest and malicious prosecution—during Moore's then-pending prosecution. In the meantime, Stucki asked the Court to dismiss the rest of Moore's claims.

Stucki is correct that the Fourteenth Amendment individual-capacity claims and all official-capacity claims do not satisfy federal pleading standards. So the Court must dismiss those claims, but does so without prejudice. The Court also grants both parties' request to hold in abeyance the individual-capacity Fourth Amendment claims and orders the parties to update the Court within 30 days of this Order.

## I. BACKGROUND

### A. Moore's Factual Allegations

According to the Complaint, whose plausible factual allegations the Court accepts as true at this stage, Shedrick Moore called the Hopkinsville Police Department to report "an attack and property damage carried out by Andre Bell." Complaint (DN 1) at 7. When Stucki arrived, Bell admitted that he "indeed committed the acts," which amounted to about $2,900 of damage to Moore's car. *Id*. Bell also told Stucki that Moore tried to run him over with a car. Despite the admission, plus supporting "physical evidence," "damage," "motive," and "eyewitness statements," Stucki arrested Moore instead of Bell. *Id.*

1

Moore sued Stucki under 42 U.S.C. § 1983, alleging that Stucki unlawfully arrested him, deprived him of due process and equal protection of the laws, and maliciously prosecuted him. *Id.* at 3. To redress his alleged injuries, Moore sought punitive damages from Stucki "in both his official and personal capacity" and an injunction "order[ing] the Hopkinsville Police Department to provide additional training to the defendant." *Id.* at 10.

### B. This Litigation

Stucki has already answered the complaint (DN 5), agreed to a stay pending state criminal proceedings (DN 8), and agreed to lift that stay following Moore's state prosecution (DN 16). And now, the criminal charges have been dismissed. So the stayed claims appear ready to proceed. (More on that below.)

In the meantime, Stucki asks the Court to enter judgment in his favor on Moore's other claims. Even assuming Moore's allegations are true, Stucki contends, the Fourteenth Amendment individual-capacity and all official-capacity claims cannot lead to liability as a matter of law. Yet although Stucki's motion is styled as a "motion to dismiss," DN 9, he answered Moore's complaint *before* filing that motion. So the Court construes it as a motion for judgment on the pleadings, which is properly filed "after the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c).

This makes little practical difference. Despite the divergent labeling and timing, the standard of review remains the same. "A motion for judgment on the pleadings under Rule 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condominium Association*, 958 F.3d 470, 480 (6th Cir. 2020). In deciding Stucki's motion, the Court therefore takes Moore's well-pleaded allegations as true, and construes them in the light most favorable to him, to determine whether the allegations would entitle him to relief. *See id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

Finding that Moore's pleadings fall short of this standard—even mindful of the generosity afforded to *pro se* litigants—the Court will grant Stucki's motion.

## II. ANALYSIS

The Court also considers multiple "responses" that Moore filed in response to Stucki's motion for judgment on the pleadings, including two sur-replies (DNs 13, 18) filed without leave of the Court. Although neither the Court's local rules nor the Federal Rules of Civil Procedure authorize parties to file sur-replies without leave, courts have nonetheless considered arguments raised in such filings—especially when a plaintiff proceeds *pro se*. *See, e.g., Reynolds v. Elizabeth*, 2016 WL 1047796, *1 (W.D. Ky. Mar. 10, 2016). So the Court will consider those filings given the need

to "construe filings by pro se litigants liberally." *Owens v. Keeling*, 461 F.3d 763, 776 (6th Cir. 2006).

This tolerance for *pro se* litigants, however, is not limitless. Their pleadings must still include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint "does not need detailed factual allegations," but it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. And the allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (citations omitted). Put another way, the complaint must "stat[e] a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

As explained below, even considering Moore's responses and sur-replies as part of his pleadings, and even assuming the truth of all nonconclusory allegations, he hasn't stated a claim that would bring him relief if proved to a jury. Though dismissal of those claims is appropriate, the Court grants Moore the opportunity to move to amend his pleadings given his *pro se* status and (as noted below) the fact that the Fourth Amendment claims remain in abeyance. *See* FED. R. CIV. P. 15(a) ("The court should freely give leave when justice so requires.").

**A. Individual-Capacity Claims**

Moore sues Stucki in his individual capacity for unlawful arrest, violation of due process, selective enforcement, and malicious prosecution. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). To establish personal liability, the plaintiff must "show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166.

1. <u>Unlawful Arrest and Malicious Prosecution</u>

Moore alleges that Stucki arrested him without probable cause in violation of the Fourth Amendment. And he adds that Stucki continued his unlawful behavior by relying on misinformation to maliciously prosecute him, also in violation of the Fourth Amendment.

The parties have not yet fully briefed the adequacy of Moore's pleadings with respect to these two claims. That is because Stucki asked the Court to "hold" Moore's "claims for malicious prosecution and wrongful arrest under the Fourth Amendment in abeyance until the conclusion of [Moore's] criminal matter." Motion to Dismiss at 11. Moore agreed, responding that he moved to stay these proceedings based on the pending state-court charges. Yet although those proceedings have finished, neither party has updated the Court regarding the need for continued abeyance or further briefing. So the Court cannot yet rule on the motion to dismiss these claims and will

ask the parties to file supplemental motions or briefs regarding next steps within 30 days.

### 2. Due Process

Read charitably, Moore's pleadings allege that Stucki violated a "duty to protect property rights," First Sur-Reply (DN 13) at 2, a "duty to conduct an impartial investigation," Second Sur-Reply (DN 18) at 9, engaged in conduct that shocks the conscience, and deprived Moore of a property interest without due process of law. Each theory fails to state a claim for relief.

The Fourteenth Amendment provides that no state "shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. That clause "protect[s] the people from the State," but doesn't "ensure that the State protect[s] them from each other." *DeShaney v. Winnebago County Dep't of Social Services.*, 489 U.S. 189, 196 (1989); *see Franz v. Oxford Community School District*, 132 F.4th 447, 451 (6th Cir. 2025) ("[B]y its terms, the Fourteenth Amendment regulates only the state's actions—not those of private actors."). And it generally doesn't "confer [an] affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney*, 489 U.S. at 196. Yet that's just what Moore's property-rights theory requires. The same goes for the allegations, added in his second sur-reply, that Stucki had a duty to "hold" Bell "accountable" and "investigate … mischief." Second Sur-Reply at 2. This is not a right that citizens may assert against law-enforcement officers. Plus, even if Stucki *did* have a duty to protect Moore's property, it's hard to see how a post-damage arrest would've satisfied any such duty. For these reasons, Moore's allegations that Stucki had some duty to protect his property or investigate and arrest Bell fail to state a claim for relief. *See Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 768 (2005) ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause.").

To be sure, the Due Process Clause *does* impose affirmative duties on the government in two narrow circumstances (though Moore doesn't discuss either). The government may have an affirmative duty to protect life, liberty, or property interests: "where the State enters into a 'special relationship' with an individual by taking that person into its custody, and … where the State creates or increases the risk of harm to an individual." *Stiles ex rel. D.S. v. Grainger County, Tennessee*, 819 F.3d 834, 853 (6th Cir. 2016) (quoting *DeShaney*, 489 U.S. at 199–201)). But Moore's pleadings don't so much as suggest that either exception applies. He says that Bell inflicted the property damage *before* Stucki arrived at the scene. And he alleges no facts about how Stucki put him in a position of "danger." *Id.* To the contrary,

whatever danger Moore faced during his altercation with Bell would have existed whether Stucki showed up or not. So even on Moore's own telling, Stucki never increased the risk that Bell, or any other danger, would harm him.

Neither does Stucki's behavior, as pled, "shoc[k] the conscience." *Rochin v. California*, 342 U.S. 165, 172 (1952). That standard does not "impos[e] liability whenever someone cloaked with state authority causes harm." *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). Only "egregious behavior … rises to the level of a substantive due process violation." *Range v. Douglas*, 763 F.3d 573, 590 (6th Cir. 2014). Moore says, in his first sur-reply, that this standard is met—that Stucki's conduct, "driven by personal bias and relationships, and the presumed intention to protect the individual who committed criminal mischief, can be considered 'shocking to the conscience.'" First Sur-Reply at 6. But those threadbare statements that allege the legal standard, "supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moore alleges no facts indicating that Stucki's behavior was conscience-shocking or particularly egregious. He never alleges that Stucki caused him physical harm. He never says that Stucki damaged his vehicle. His main gripe, rather, is Stucki's exercise of discretion to arrest him rather than Bell. Yet even if that decision was wrong (and Moore hasn't pled facts showing it was), it falls far short of the shocks-the-conscience standard courts have inferred as part of constitutional due-process guarantees against law-enforcement action or inaction.

Nor has Moore alleged facts showing that Stucki deprived him of property. *See* Response to Motion to Dismiss (DN 10) at 7. Indeed, he doesn't identify any property at all that Stucki might've taken. He instead, alleges, among other things, that Stucki's "incompetence and negligence," "arbitrary enforcement actions," "reliance on inaccurate or incomplete information," and "the denial of the opportunity to ask relevant questions during the preliminary hearing process" violated his procedural due process rights. First Sur-Reply at 8. But these "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" fail to satisfy pleading standards. *Iqbal*, 556 U.S. at 678 (quotation marks omitted). And Moore never explains how Bell's damage to his car—before Stucki arrived—somehow makes Stucki liable for that property damage. Without facts that identify a "life, liberty, or property interest protected by the Due Process Clause" that Stucki "deprived" him of, Moore hasn't alleged a procedural due process claim. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

Plus, even if the state deprived Moore of a property interest, his complaint still fails to allege any facts indicating that state law provides insufficient process to remedy his purported violations. Moore relies, instead, on "labels and conclusions." *Twombly*, 550 U.S. at 555. He alleges, among other things, that state remedies are "inadequate," that he "was not afforded the fair procedural safeguards necessary for justice," and that "incompetence" impacted "procedural fairness." Response to Motion to Dismiss at 9–10. But he never pleads the who, where, when, or how—other than

5

that "preliminary hearings and grand jury presentations" were somehow "compromised." *Id.* at 9. Without any factual allegations, Moore doesn't plausibly allege that any deficiency in state-law process created or failed to redress his alleged deprivations. *See Hill v. City of Jackson, Michigan*, 751 F. App'x 772 (6th Cir. 2018); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

### 3. Selective Enforcement

Because Stucki did not arrest Bell, Moore says that those "actions demonstrated an unequal application of the law." Motion to Dismiss Response at 8.

Courts have interpreted the Equal Protection Clause of the Fourteenth Amendment to guard against selective enforcement of the laws based on a protected characteristic such as race, national origin, or religion. *See DeShaney,* 489 U.S. at 197 n.3. Stating a civil claim for selective prosecution requires three things: (1) an official "must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations"; (2) the official "must initiate the prosecution with a discriminatory purpose"; and (3) "prosecution must have a discriminatory effect on the *group* which the defendant belongs to." *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991). Such claims can be difficult to prove because they must "overcome the presumption that the state actors have properly discharged their official duties." *Gardenhire v. Schubert*, 205 F.3d 303, 320 (6th Cir. 2000).

Moore has not alleged that he's part of an "identifiable group," racial or otherwise. *Anderson*, 923 F.2d at 453. He makes no argument that Stucki sought to arrest him because of his "particular race or religion" or his affiliation with "a group exercising constitutional rights." *Id.* And even had he alleged that he belonged to an identifiable group, his pleadings make quite clear that his (alleged) conduct differed from Bell's: Moore told Stucki that Bell damaged his car, and Bell told Stucki that Moore attempted to run him over with a car. If true, that hardly makes Bell a "similarly situated" individual that Stucki chose not to arrest. *Id.* Yet without identifying a similarly situated individual, Moore's selective-enforcement claim fails: "With regard to the first element, 'it is an absolute requirement that the plaintiff make at least a *prima facie* showing that similarly situated persons outside her category were not prosecuted.'" *Gardenhire*, 205 F.3d at 319 (citing *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997)).

Nor has Moore alleged facts suggesting that Stucki arrested Moore based on a discriminatory purpose. Calling Stucki "biased" or asserting that he lacked probable cause is, of course, conclusory. And Moore adds no facts that (if proved) would indicate a discriminatory purpose. *See Gardenhire*, 205 F.3d at 319 (purposeful

6

discrimination requires law-enforcement intent based on a protected characteristic or arbitrary classification). Because Moore hasn't pled any facts indicating that any protected characteristic motivated Stucki's allegedly unlawful arrest, he cannot state a claim for selective enforcement

Moore's first sur-reply suggests that he needn't identify a group or discriminatory animus because he brings a "class-of-one" selective-enforcement claim. First Sur-Reply at 3. Under that theory, however, Moore must still allege that Stucki distinguished Moore from Bell based on some "bad reason," or that Stucki "had no rational basis" to distinguish the two men. *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004). Yet he doesn't allege any of that either. He identifies no improper reason—only a "lack of probable cause" and reliance on a "lack of credible evidence." Response to Motion to Dismiss at 8; First Sur-Reply at 3. That's hardly inconsistent with a cop rationally deciding to arrest only one of two people involved in a heated dust-up over a car and a love interests.

Finally, Moore asserts in his second sur-reply that *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), supports his claim. Second Sur-Reply at 3. That decision recognized an equal-protection based only on "intentionally … differen[t]" treatment compared to "others similarly situated" without any "rational basis for the difference in treatment." *Id.* at 564. But for reasons already explained, this does Moore no good. He doesn't identify a similarly situated individual, and he doesn't say why an officer couldn't rationally distinguish vandalism from assault with a moving vehicle.

## B. Official-Capacity Claims

Moore's official-capacity claims against Stucki assert the same four theories discussed above: unlawful arrest, deprivation of due process, selective enforcement, and malicious prosecution. But they fail for more fundamental reasons.

An official-capacity claim "generally represents only another way of pleading an action against an entity of which an officer is an agent." *Graham*, 473 U.S. at 165–66 (quoting *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978)). Consistent with that principle, the Court construes Moore's official-capacity claims as claims against Stucki's employer rather than Stucki himself. *See Monell*, 436 U.S. at 690. But this relabeling only works if "the government entity receives notice and an opportunity to respond." *Mumford v. Basinski*, 105 F.3d 264, 270 n.8 (6th Cir. 1997) (quoting *Graham*, 473 U.S. at 165–66). And Moore did not name the City of Hopkinsville as a defendant, did not indicate whether he tried to serve the City, and apparently has given the City no opportunity to respond. Without notice to the City and an opportunity to respond, the official-capacity claim is "'fatally defective' because no defendant is properly before the court to face it." *Baker v. Bean*, 2025 WL 2323953, at *3 (W.D Ky. Aug. 12, 2025) (citing *Mumford*, 105 F.3d at 270 n.8)).

And even if the City were a party, Moore's allegations would still fail to state a claim. Establishing municipal liability based on an officer's action is not a matter of ordinary *respondeat superior*; it requires a plaintiff to connect the harmful act to municipal policy. *See Graham*, 473 U.S. at 165–66. To do that, a plaintiff must "identify the municipal policy or custom," "connect the policy to municipality," and "show that [their] particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). The first of these elements can be pled by alleging facts about "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Yet Moore's complaint alleges no facts that support an official-capacity claim under any of these theories. And although his subsequent filings seek to cure that deficiency, his additional allegations—charitably read as failure-to-train and unlawful-custom theories—are mere legal conclusions that don't "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.[*]

1. <u>Failure to Train</u>

To establish liability under a failure-to-train theory, "a plaintiff 'must establish that: 1) the City's training program was inadequate for the tasks that officers must perform; 2) the inadequacy was the result of the City's deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006)). Moore's allegations rely solely on legal conclusions, so they fall short of all three requirements.

First, to determine "whether a municipality has adequately trained its employees, 'the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.'" *Jackson*, 925 F.3d at 834 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Moore has alleged nothing about the City of Hopkinsville's training program—aside from its bare inadequacy. Instead, he alleges that "Stucki's apparent lack of understanding of equal protection principles and disregard for procedural obligations suggest inadequate training by the City of

---

[*] Contrary to Moore's argument, Stucki did not "waive" his argument that Moore fails to state a claim for relief. Moore is right that "Monell liability" was "not addressed in the defendant's answer." Response to Motion to Dismiss at 3. But failure to state a claim upon which relief may be granted is a defense that can be raised through trial. *See* FED. R. CIV. P. 12(h)(2).

8

Hopkinsville." Second Sur-Reply at 7. But such a general allegation says nothing factual about what training the Hopkinsville Police Department did or should've provided—or how and why that training fell short of constitutional standards.

Next, Moore hasn't pled any facts showing a "plainly obvious" risk that the training the municipal provides to its officers will result in a constitutional violation. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (quoting *Board of County Commissioners v. Brown*, 520 U.S. 397, 412 (1997)). A plaintiff can make this showing in one of two ways: (1) "prior instances of unconstitutional conduct demonstrating that the City had notice that the training was deficient and likely to cause injury but ignored it," or (2) "evidence of a single violation of federal rights, accompanied by a showing that the City had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Jackson*, 925 F.3d at 836 (cleaned up).

To demonstrate an obvious risk, Moore relies on three separate incidents: 1) an untitled "relatable incident," Second Sur-Reply at 6; 2) a case labeled "Commonwealth v. Moore Shedrick," *id.* at 12; and 3) another lawsuit called "Commonwealth v. Ann Cherry," *id.* at 10. He describes the purported similarities of these incidents to his own arrest in conclusory fashion, however. On his telling, these other incidents likewise involved an "unwarranted search," *id.* at 12, "bias," *id.*, "unlawful actions" and "discriminatory reasoning or personal bias," *id.* at 13–14, and "unlawful searches and seizures," *id.* at 14. These labels and conclusions fail to identify any facts showing that the City had notice of its unconstitutionally deficient training yet did nothing to change course. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Nor do they demonstrate that the Hopkinsville Police Department failed to train its employees to "handl[e] claims of unlawful searches and seizures." Second Sur-Reply at 14. All Moore alleges is that sometimes (in his view) City officers failed to comply with proper standards. *See id.* That is insufficient to pin liability on the City.

Nor has Moore pled facts indicating that the City's unlawful conduct caused his injury. *See Jackson*, 925 F.3d at 834. Causation, after all, requires more than a bare assertion that the officer committed a constitutional violation because of the municipality's custom; instead, it demands that the "inadequacy was closely related to or actually caused the injury." *Id.* (quoting *Ciminillo*, 434 F.3d at 469); *see, e.g.*, *Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 501 (W.D. Ky. 2021).

Moore's sur-replies merely repackage rather than repair his initial claims. He repeats that the "City fail[ed] to provide adequate training or oversight" and "allowed these violations to occur unchecked." Second Sur-Reply at 8. He also mentions a "systemic deficiency" that traces back to the "City of Hopkinsville's polices and/or

9

practices" and contends that Stucki's conduct "supports the argument that the City's policies or customs directly led to the unequal treatment of the Plaintiff." *Id.* at 9, 11. None of these unadorned assertions indicate that a training policy, or lack thereof, caused Stucki's allegedly unlawful arrest. Because he hasn't alleged facts indicating that the City's alleged inadequate training was "closely related to or actually caused the injury," he cannot state a *Monell* claim based on an inadequate training theory of liability. *Jackson*, 925 F.3d at 834 (quoting *Ciminillo*, 434 F.3d at 469).

    2. <u>Custom</u>

Moore's allegations in his sur-replies also fail to state a *Monell* "custom" claim. To state that claim, a plaintiff must allege that the City of Hopkinsville has (1) a "clear and persistent pattern" of unlawful searches, selective enforcement, and due process violations; (2) had "notice or constructive notice" of the unlawful conduct; (3) "tacit[ly] approv[ed] of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction"; and (4) "direct[ly] caus[ed] … the constitutional deprivation." *Doe v. Claiborne County, Tennessee ex rel. Claiborne County Board of Education*, 103 F.3d 495, 508 (6th Cir. 1996).

To support his custom claim, Moore describes two other times he's been arrested by an officer of the Hopkinsville Police Department, and he refers to a lawsuit against the city's officers brought by a different plaintiff.

First, his second sur-reply refers to the "transcript" of a "relatable incident"—without describing any of the facts of incident. Second Sur-Reply at 6. Instead, he alleges statements made by Stucki, which, as he sees it, proves "preconceived bias," and a "predisposition to pursue charges against the Plaintiff." *Id.*

Next, he mentions his encounter with an officer who "misinterpreted a work accessory—a welder's protective headscarf displaying American flag colors—as a 'gang-related bandanna.'" *Id.* at 12. As Moore describes it, this incident "reveals a systemic issue with the Hopkinsville Police Department" because "[o]fficers repeatedly violated procedural and constitutional rights, targeting individuals based on discriminatory reasoning or personal bias." *Id.* at 13–14.

Finally, he refers to "Commonwealth v. Ann Cherry," which, he alleges, proves "targeted enforcement" due to a "political stance against" the police officer's ordinance. *Id.* at 10. Though Moore provides no citation to this case, the Court assumes (based on Moore's description), that he refers to the same facts described in *Cherry v. Howie*, 2017 WL 1146960 (W.D. Ky. 2017). In *Cherry*, the plaintiff alleged that the defendants pursued criminal charges against her because she opposed a city ordinance, and they sought to remove her from elected office. *Id.* at *2. But Moore

10

fails to explain how a case about an alleged retaliation to a plaintiff's city-council position bares any resemblance to his case. His purported analogy to the *Cherry* incident rests only on another string of labels: here as there, he says, the government's "procedural deviations included manipulating evidence, omission of critical facts, and presenting misleading narratives to support retaliatory prosecution." Second Sur-Reply at 11.

With descriptions this thin—of these under- and unreported incidents and Moore's present controversy—the Court cannot see, or even infer, a plausible pattern of misconduct that would justify municipal liability. That, after all, "implies repetition of *similar* events." *Sistrunk*, 545 F. Supp. 3d. at 503 (emphasis added). "[M]erely citing other pending lawsuits does not describe and cannot support a claim" that the City "customarily fails to train officers." *Id.* But that's all Moore offers: mishaps of unknown third parties, dissimilar lawsuits, and his own unreported encounters with the Hopkinsville Police Department. These incidents—which seemingly arise from different facts and, for the most part, different constitutional violations—do not plausibly suggest that the City has a custom of illegal and selective arrests that caused any violation of Moore's rights.

## ORDER

For the reasons stated above, the Court:

- holds in abeyance the Fourth Amendment unlawful-arrest and malicious-prosecution claims against Stucki in his personal capacity;

- dismisses without prejudice the Due Process and Equal Protection claims against Stucki in his personal capacity;

- dismisses without prejudice all claims against Stucki in his official capacity;

- orders that the parties provide a status update regarding the claims held in abeyance within 30 days; and

- orders Moore to file any motion to amend his pleadings, should he wish to address the pleading deficiencies identified in this order, within 30 days.

11